**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CATHERINE BEASLEY, on behalf of herself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>FUBOTV, INC.,<br><br>*Defendant*. | Case No. 1:24-cv-00711 (CM) (RWL) |

**MEMORANDUM IN SUPPORT OF DEFENDANT FUBOTV, INC.'S**
**MOTION TO COMPEL INDIVIDUAL ARBITRATION**

# TABLE OF CONTENTS

Page


I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

A. Fubo Requires Customers To Agree To The Effective Terms Of Service As A Condition Of Using Fubo's Platform .......... 2

B. Plaintiff Registered Four Accounts With Fubo And Agreed To Fubo's Terms Of Services .......... 4

C. The Terms of Service Contain An Arbitration Provision Delegating Threshold Questions of Arbitrability To The Arbitrator, A Waiver Of Class Arbitration, And A Data Privacy Provision .......... 4

D. Plaintiff Did Not Submit An Opt-Out Notice After Entering Into The Terms of Service With Fubo .......... 7

E. Despite Agreeing to Arbitrate On An Individual Basis, Plaintiff Filed Her Class Complaint And Has Refused To Submit Her Claims To Individual Arbitration .......... 8

III. LEGAL STANDARD .......... 8

IV. ARGUMENT .......... 10

A. Plaintiff Repeatedly Agreed To The Arbitration Provision And Class Waiver In The Terms Of Service .......... 10

B. The Arbitration Provision Encompasses Plaintiff's Claims And Delegates Disputes About Gateway Arbitrability Issues To The Arbitrator .......... 15

C. Federal Statutory Claims Under The VPPA Are Arbitrable .......... 20

D. Plaintiff's Claims Should Be Stayed or Dismissed .......... 21

V. CONCLUSION .......... 22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran*,
445 F.3d 121 (2d Cir. 2006)........................................................................................8

*Aneke v. Am. Exp. Travel Related Servs., Inc.*,
841 F. Supp. 2d 368 (D.D.C. 2012)..........................................................................21

*Applied Energetics, Inc. v. NewOak Cap. Mkts, LLC*,
645 F.3d 522 (2d Cir. 2011)........................................................................................10

*Arciniaga v. Gen. Motors Corp.*,
460 F.3d 231 (2d Cir. 2006)..........................................................................................9

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)...............................................................................................8, 20

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986)......................................................................................................9

*Bensadoun v. Jobe-Riat*,
316 F.3d 171 (2d Cir. 2003)..........................................................................................9

*Berkson v. Gogo LLC*,
97 F. Supp. 3d 359 (E.D.N.Y. 2015)..........................................................................10

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
2017 WL 7309893 (S.D.N.Y. Nov. 20, 2017), *report and recommendation adopted as modified*, 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018)
.........................................................................................................12, 14, 15, 21

*Bimota SPA v. Rousseau*,
628 F. Supp. 2d 500 (S.D.N.Y. 2009)........................................................................22

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
58 F.3d 16 (2d. Cir. 1995)..........................................................................................16

*Davis v. S. Energy Homes, Inc.*,
305 F.3d 1268 (11th Cir. 2002)..................................................................................20

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)....................................................................................................21

*Edmundson v. Klarna, Inc.*,
85 F.4th 695 (2d Cir. 2023)...............................................................................10, 14, 15

*Emilio v. Sprint Spectrum LP*,
508 F. App'x 3 (2d Cir. 2013) ....................................................................................19

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018)...................................................................................................1

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012)........................................................................12

*Garten v. Kurth*,
265 F.3d 136 (2d Cir. 2001).......................................................................................11

*Gateguard, Inc. v. MVI Sys. LLC*,
2021 WL 4443256 (S.D.N.Y. Sept. 28, 2021)..............................................................18

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991)....................................................................................................20

*Guyden v. Aetna, Inc.*,
544 F.3d 376 (2d Cir. 2008)..............................................................................9, 15, 20

*Litvinov v. UnitedHealth Grp. Inc.*,
2014 WL 1054394 (S.D.N.Y. Mar. 11, 2014) ................................................................9

*Marcus v. Frome*,
275 F. Supp. 2d 496 (S.D.N.Y. 2003).........................................................................17

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017)..................................................................................10, 13, 15

*Michel v. Parts Auth., Inc.*,
2016 WL 11798927 (E.D.N.Y. June 17, 2016) .............................................................21

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)........................................................................................................9

*Mumin v. Uber Techs., Inc.*,
239 F. Supp. 3d 507 (E.D.N.Y. 2017) ..........................................................................9

*Murray v. UBS Securities, LLC*,
2014 WL 285093 (S.D.N.Y. Jan. 27, 2014) ..........................................................19, 21

*Nayal v. HIP Network Svcs. IPA, Inc.*,
620 F. Supp. 2d 566 (S.D.N.Y. 2009).........................................................................20

*Orange Cnty. Choppers, Inc. v. Goen Techs. Corp.*,
374 F. Supp. 2d 372 (S.D.N.Y. 2005)...................................................................16, 17, 22

*Paramedics Electromedicina Comercial Ltda v. GE Med. Sys. Info. Techs., Inc.*,
369 F.3d 645 (2d Cir. 2004)....................18

*Saizhang Guan v. Uber Techs., Inc.*,
236 F. Supp. 3d 711 (E.D.N.Y. 2017)....................12

*Selden v. Airbnb, Inc.*,
4 F.4th 148 (D.C. Cir. 2021)....................14

*Shaw Grp. Inc. v. Triplefine Int'l Corp.*,
322 F.3d 115 (2d Cir. 2003)....................11

*Shearson/Am. Express, Inc. v. McMahon*,
482 U.S. 220 (1987)....................20

*Sherr v. Dell, Inc.*,
2006 WL 2109436 (S.D.N.Y. July 27, 2006)....................11

*Sinavsky v. NBCUniversal Media, LLC*,
2021 WL 4151013 (S.D.N.Y. Sept. 13, 2021)....................18

*Starke v. Squaretrade, Inc.*,
2017 WL 3328236 (E.D.N.Y. Aug. 3, 2017)....................10

*Telenor Mobile Commcn's AS v. Storm LLC*,
584 F.3d 396 (2d Cir. 2009)....................19

*United States v. Sutcliffe*,
505 F.3d 944 (9th Cir. 2007)....................11

**STATUTES**

18 U.S.C. § 2710(c)(1)....................20

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*....................1

Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq.*....................8

**RULES**

NAM Comprehensive Dispute Resolution Rules and Procedures, Rule 17(B), available at https://www.namadr.com/content/uploads/2022/04/Comprehensive-Rules-as-of-4.18.2022.pdf (last accessed Apr. 8, 2024)....................18

Defendant fuboTV, Inc. ("Fubo") submits the following memorandum in support of its motion to compel individual arbitration.[1]

## I. INTRODUCTION

As she agreed when she began using Fubo's services, Plaintiff's claims can be brought only on an individual basis and only in arbitration, not court. Plaintiff's agreement to individually arbitrate any dispute relating to her relationship with Fubo is valid, and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., requires "courts [to] rigorously [] enforce arbitration agreements according to their terms." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018). Accordingly, the Court should compel arbitration of Plaintiff's claims on an individual basis.

This case arises from Plaintiff's use of Fubo's services to watch live TV and other entertainment over the internet. Before using Fubo, Plaintiff registered a profile and agreed to be bound by the effective Terms of Service, including an arbitration provision compelling arbitration of any and all disputes or claims between Fubo and Plaintiff that arise out of or relate to the Terms, which would encompass the claims she brings here. Those Terms of Service also contain a waiver of class arbitration, which makes clear that Plaintiff agreed to bring and pursue claims against Fubo only in her individual capacity. Plaintiff did not opt out of the arbitration provision or class waiver, making them binding here. In addition, the effective Terms of Service contain a valid delegation provision with clear and unmistakable language delegating threshold questions of arbitrability to the arbitrator. Plaintiff should be compelled to submit her claims to individual arbitration, and this case should be stayed or dismissed pending resolution of that arbitration.

[1] Unless otherwise indicated, all internal citations and quotations are omitted, and all emphasis is added. Citations to "Ex. _" refer to the exhibits attached to the Declaration of Bradley Allen, and citations to "App." refer to the appendix filed concurrently with this brief.

# II. BACKGROUND

## A. Fubo Requires Customers To Agree To The Effective Terms Of Service As A Condition Of Using Fubo's Platform

Fubo offers a streaming television service that makes available to customers over the internet live TV and other entertainment via Fubo's website and smartphone application (the "Fubo app") (collectively, the "Fubo Platform"). Declaration of Bradley Allen (the "Allen Decl.") ¶ 3. Before using the Fubo Platform, a customer must register an account with Fubo. *Id.* ¶ 5. To do so, the customer must access Fubo's sign-up page at https://www.fubo.tv/signup, which brings them to the screen shown below:




*Id.* The customer must click the "Next" button shown above to begin the registration process. *Id.* ¶ 6. The customer is then directed to a webpage, shown below, prompting them to "Start your free trial" by entering an email address, password, and home ZIP code:




*Id.* After entering their home ZIP code, customers must click a "Confirm" button located to the right of the ZIP-code field to verify that their home ZIP code was entered correctly before they can click "Continue" and proceed with the rest of the registration process. *Id.*

As shown above, Fubo's effective "Terms of Service" are underlined and hyperlinked in blue font directly above the "Continue" button. If a customer clicks on the hyperlink, they are directed to a page with the full set of the effective Terms of Service. *Id.* ¶ 7. The Terms of Service are also publicly accessible through Fubo's website. *Id.* Customers must select the "Continue" button affirming that they "agree to the Terms of Service" to proceed with the Fubo registration process. *Id.* Fubo's Terms of Service provide the terms and conditions under which Fubo offers customers access to the Fubo Platform; a customer must agree to the effective Terms of Service during the registration process and as a condition of using the Fubo Platform. *Id.*

### B. Plaintiff Registered Four Accounts With Fubo And Agreed To Fubo's Terms Of Services

Plaintiff first registered with Fubo and agreed to the effective Terms of Service on December 14, 2023. *Id.* ¶ 9. Plaintiff subsequently used three additional email addresses to create three separate accounts with Fubo on December 24, 2023, January 1, 2024, and January 23, 2024. *Id.* ¶¶ 10-12. As a condition of creating each account and using the Fubo Platform, Plaintiff was required *each* time to register a profile and agree to the effective Terms of Service. *Id.* ¶ 13. Fubo's current Terms of Service have been in effect since November 1, 2023, meaning that Plaintiff was required to agree to those terms as a condition of creating each of her four accounts with Fubo. *Id.* ¶¶ 9, 13. As noted, the Terms of Service were publicly available and hyperlinked in blue and underlined font on the webpage that Plaintiff used to sign up for all of her accounts and above the "Continue" button she was required to click, giving her the opportunity to review the Terms before agreeing to them. *Id.* ¶ 7.

### C. The Terms of Service Contain An Arbitration Provision Delegating Threshold Questions of Arbitrability To The Arbitrator, A Waiver Of Class Arbitration, And A Data Privacy Provision

The Terms of Service to which Plaintiff agreed four times "mandate that all disputes between [customers] and Fubo be resolved first through an information dispute resolution process," and then "through binding arbitration," as set forth below:

> PLEASE READ THIS SECTION CAREFULLY. IT MAY SIGNIFICANTLY AFFECT YOUR LEGAL RIGHTS—INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT (BY REQUIRING YOUR DISPUTE TO BE SUBMITTED TO ARBITRATION) AND LIMITING YOUR RIGHTS TO RESOLVE YOUR DISPUTE AS PART OF A CLASS.
>
> As detailed herein, the Terms of Service mandate that all disputes between you and Fubo be resolved first through an informal dispute resolution process. In the event informal resolution fails, the Terms of Service further mandate that all disputes (except those identified in Section 22.3) be formally resolved through binding arbitration. Binding arbitration means that an arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve such disputes.

> Consequently, you should read the entirety of Section 22 carefully as it may significantly affect your legal rights.

Ex. 1 § 22 (emphasis in original). If "the parties' dispute is not resolved within sixty (60) days after receipt of the written description of the dispute by a party, you and Fubo agree to resolve any remaining dispute through the additional dispute resolution provisions set forth [in the Terms of Service] below." *Id.* § 22.1. Those "additional dispute resolution provisions" include an arbitration provision stating that "all claims, disputes, or disagreements that may arise out of or relating to the interpretation, applicability, enforceability, formation, or performance of these Terms of Service" must be resolved in an individual arbitration, delegating threshold questions about "whether a claim is subject to arbitration" to the arbitrator, and otherwise providing as follows:

> Except as set forth in Section 22.3 below, you and Fubo agree that all claims, disputes, or disagreements that may arise out of or relating to the interpretation, applicability, enforceability, formation, or performance of these Terms of Service— including but not limited to any claim that all or any part of these terms are void or voidable, whether a claim is subject to arbitration, and any dispute regarding the payment, non-payment, or timing of any administrative or arbitrator fees—shall be resolved exclusively through binding arbitration in accordance with this Section 22.2 (collectively, the "Arbitration Agreement"). The arbitrator shall be empowered under this Arbitration Agreement to grant whatever relief would be available in a court under law or in equity. The arbitrator has the right to impose sanctions in accordance with the arbitration provider's rules and procedures for any frivolous claims or submissions the arbitrator determines have not been filed in good faith, as well as for a party's failure to comply with this Section 22.2.
>
> This Arbitration Agreement is intended to be interpreted broadly, and it applies to claims that arose, were asserted, or involve facts occurring before the existence of this Arbitration Agreement or any prior agreement as well as claims that may arise after the termination of this Arbitration Agreement, in accordance with the notice opt-out provisions set forth in Sections 22.4 and 22.5.
>
> This Arbitration Agreement is governed by the Federal Arbitration Act ("FAA") in all respects and evidences a transaction involving interstate commerce. You and Fubo expressly agree that the FAA shall exclusively govern the interpretation and enforcement of this Arbitration Agreement. If for whatever reason the rules and procedures of the FAA cannot apply, the state law governing arbitration agreements in the state in which you reside shall apply.

> Except as set forth in Section 22.2(c) below, if any provision of this Arbitration Agreement is found by an arbitrator or court of competent jurisdiction to be invalid, the parties nevertheless agree that the arbitrator or court should endeavor to give effect to the parties' intentions as reflected in the provision, and the other provisions thereof remain in full force and effect.

*Id*. § 22.2(a).

The Terms of Service also contain a waiver of class arbitration and collective relief, which states in part:

> YOU AND FUBO ACKNOWLEDGE AND AGREE THAT, TO THE MAXIMUM EXTENT ALLOWED BY LAW, AND EXCEPT AS OTHERWISE SET OUT IN THIS SECTION 22.2(c) AND SECTION 22.2(e)(vi) BELOW, ANY ARBITRATION SHALL BE CONDUCTED IN AN INDIVIDUAL CAPACITY ONLY AND NOT AS A CLASS OR OTHER CONSOLIDATED ACTION, AND THE ARBITRATOR MAY AWARD RELIEF ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO RESOLVE AN INDIVIDUAL PARTY'S CLAIM; NOTWITHSTANDING THIS ACKNOWLEDGEMENT AND AGREEMENT, ANY ARBITRATION INVOLVING YOU MAY PROCEED ON A CONSOLIDATED BASIS IF AND ONLY IF FUBO PROVIDES ITS CONSENT TO CONSOLIDATE IN WRITING.

*Id*. § 22.2(c) (emphasis in original). Section 22.2(e)(vi) further provides that "[u]nless Fubo otherwise consents in writing, Fubo does not agree or consent to class arbitration, private attorney general arbitration, or arbitration involving joint or consolidated claims under any circumstances, except as set forth in Section 22.2(c) and this Section 22.2(e)(vi)."

Moreover, the Terms of Service contain an introductory section flagging the importance of the arbitration provision and class waiver, as shown below:

> PLEASE CAREFULLY READ THIS AGREEMENT. BY USING THE SERVICES OR BY INDICATING YOUR ASSENT TO THIS AGREEMENT BY REGISTERING YOUR ACCOUNT, CLICKING "I ACCEPT" OR ANY SIMILAR MECHANISM, YOU ARE CONSENTING TO BE BOUND BY THE TERMS OF THIS AGREEMENT, DO NOT ACCESS OR USE THE SERVICE OR REGISTER AN ACCOUNT IF YOU DO NOT AGREE TO THIS AGREEMENT.
>
> THESE TERMS MAY IMPACT YOUR LEGAL RIGHTS IN THE EVENT OF A DISPUTE BETWEEN US. SPECIFICALLY, PLEASE REFER TO SECTION 22

> BELOW, WHICH REQUIRES THAT CERTAIN DISPUTES BE SETTLED THROUGH MANDATORY BINDING ARBITRATION WHICH WILL PRECLUDE YOU FROM LEADING OR PARTICIPATING IN A CLASS ACTION.

*Id*. at p. 1 (emphasis in original).

Finally, the "Data Privacy" provision in the Terms of Service states in part:

> - **a. Your Information**. You expressly consent to the use and disclosure of your personal information and any other information or data resulting from Your access to and use of the Platform or any Services or Content as described in the Privacy Policy for the Platform available at legal.fubo.tv/policies/en-US/?name=privacy-policy ("**Privacy Policy**") at the time You provide such information or data to Fubo. Notwithstanding anything in the Privacy Policy, Fubo will have the right to collect and use non-personal identifiable information or data (information or data that does not identify an entity or natural person as the source thereof) resulting from or relating to Your access to and use of the Platform or any Services or Content. To the extent any such data or information is collected or generated by Fubo, that data and information will be owned by Fubo and may be used by Fubo for any lawful business purpose without any further duty or obligation to You.

*Id*. § 10(a) (emphasis in original).

### D. Plaintiff Did Not Submit An Opt-Out Notice After Entering Into The Terms of Service With Fubo

The Terms of Service provided Plaintiff with the opportunity to opt out of the arbitration provision and class waiver by sending a written opt-out notice within thirty days of her first use of Fubo's Services, as set forth below:

> You have the right to opt-out and not be bound by the arbitration and class action waiver provisions set forth above by sending written notice, signed by you, of your decision to opt-out to the following address: privacy@fubo.tv. The notice must be sent within 30 days of August 28, 2023, or your first use of the Services, whichever is later; otherwise, you shall be bound to arbitrate disputes in accordance with the terms of Section 22.2. If you opt-out of the arbitration provisions, Fubo also will not be bound by them.
>
> Fubo will continue to honor any valid opt outs if you opted out of arbitration in a prior version of the Terms pursuant to the requirements set forth in that version. If you do not timely opt out of this Arbitration Agreement, such action shall constitute mutual acceptance of the terms of these "Dispute Resolution" provisions by you and Fubo.

Ex. 1 § 22.4. Plaintiff did not submit a timely opt-out notice after signing the Terms of Service any of the four times she created an account. Allen Decl. ¶ 15.

### E. Despite Agreeing to Arbitrate On An Individual Basis, Plaintiff Filed Her Class Complaint And Has Refused To Submit Her Claims To Individual Arbitration

Despite her agreement to submit claims against Fubo to individual arbitration, Plaintiff filed this putative class action suit on January 31, 2024, alleging that Fubo violated the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710 *et seq.*, by allegedly disclosing her "personally identifiable information" to third parties without her informed, written consent. *See* Compl. ¶¶ 56-64. Plaintiff purports to bring this action on behalf of herself and a proposed class of "[a]ll persons in the United States who, during the maximum period of time permitted by law, logged in to Defendant's Website or applications and viewed prerecorded content using their mobile or computer browsers." *Id.* ¶ 47.

After being served with the Complaint, Fubo determined that the dispute was governed by the arbitration provision and class waiver in its Terms of Service. Undersigned counsel raised the arbitration and class waiver provisions with Plaintiff's counsel, who declined to submit Plaintiff's claims to individual arbitration.

## III. LEGAL STANDARD

The FAA "creates a body of federal substantive law of arbitrability applicable to arbitration agreements … affecting interstate commerce." *Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran*, 445 F.3d 121, 125 (2d Cir. 2006). "[T]he FAA was designed to promote arbitration," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011), and "it is a policy [the Second

Circuit] ha[s] often and emphatically applied," *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006).

To determine whether an arbitration agreement is enforceable under the FAA, a court must decide:

> [1] whether the parties agreed to arbitrate; [2] the scope of that agreement; [3] if federal statutory claims are asserted, … whether Congress intended those claims to be nonarbitrable; and [4] if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008). Federal policy favors arbitration, such that an order compelling arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause [in a contract or agreement] is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Guyden*, 544 F.3d at 382 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

Motions to compel arbitration are reviewed under a "standard similar to that applicable for a motion for summary judgment." *Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 521 (E.D.N.Y. 2017) (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). The non-movant must identify a "triable issue of fact" based on the record to defeat a motion to compel arbitration. *Litvinov v. UnitedHealth Grp. Inc.*, 2014 WL 1054394, at *2 (S.D.N.Y. Mar. 11, 2014) (granting motion to compel arbitration where the non-moving party did not identify a "triable issue of fact" as to whether the arbitration agreement applied).

## IV. ARGUMENT

This lawsuit should never have been filed in court, let alone as a putative class action. Now that Plaintiff has done so, this Court should compel her to arbitrate her claims on an individual basis.

### A. Plaintiff Repeatedly Agreed To The Arbitration Provision And Class Waiver In The Terms Of Service

"The party seeking arbitration has the burden of establishing an agreement to arbitrate," *Starke v. Squaretrade, Inc.*, 2017 WL 3328236, at *5 (E.D.N.Y. Aug. 3, 2017), and Fubo easily meets that burden here.[2] Plaintiff agreed to the Terms of Service four times from December 14, 2023 through January 23, 2024. Allen Decl. ¶¶ 9-12. Before signing up for each of her Fubo accounts, Plaintiff was required to enter her email address, password, and home ZIP code on a webpage with language in conspicuous font stating: "By continuing, I agree to the Terms of Service, acknowledge the Privacy Policy, and agree to receive promotional emails regarding fuboTV." *Id.* ¶¶ 6-7. The effective "Terms of Service" were underlined and hyperlinked in blue font, and the link to the "Terms of Service" was located directly above the "Continue" button. *Id.* If Plaintiff had clicked on the hyperlink, she would have been directed to pages with the full terms of the effective Terms of Service. *Id.* ¶ 7. Plaintiff was required to click "Continue" and agree to

[2] "[I]n deciding whether a contractual obligation to arbitrate exists, courts should generally apply state-law principles that govern the formation of contracts." *Applied Energetics, Inc. v. NewOak Cap. Mkts, LLC*, 645 F.3d 522, 526 (2d Cir. 2011). Although the Terms of Service are governed by New York law, Ex. 1 § 23, the Court may consult cases applying the law of California and other States, as "the substantive contractual laws of New York, California, and Illinois … are substantively similar with respect to the issue of contract formation." *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 388 (E.D.N.Y. 2015); *see also Edmundson v. Klarna, Inc.*, 85 F.4th 695, 702-03 (2d Cir. 2023) ("[T]raditional contract formation law does not vary meaningfully from state to state, … and therefore, our precedents determining the enforceability of arbitration provisions according to the contract-law principles of other states may also be relevant to this dispute."); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (noting that "New York and California apply substantially similar rules for determining whether the parties have mutually assented to a contract term").

Fubo's Terms of Service each time that she created an account, and Plaintiff reaffirmed her agreement to the Terms of Service each time by not submitting a notice of an intent to opt out of the arbitration provision and class waiver. *Id.* ¶¶ 7, 13, 15.

The FAA applies to arbitration agreements, such as the one here and to which Plaintiff agreed, that expressly invoke the FAA. *See Sherr v. Dell, Inc.*, 2006 WL 2109436, at *2 n.1 (S.D.N.Y. July 27, 2006) (determining that the FAA applied because the matter "involves interstate commerce" and the arbitration agreement stated "that the FAA governs the provision"). Fubo's Terms of Service provide that "[t]his Arbitration Agreement is governed by the Federal Arbitration Act ('FAA') in all respects and evidences a transaction involving interstate commerce," Ex. 1 § 22.2(a), and that "[y]ou and Fubo expressly agree that the FAA shall exclusively govern the interpretation and enforcement of this Arbitration Agreement," *id.* § 15. Even without this express provision applying the FAA, the FAA would nonetheless apply because it governs enforcement of user agreements that apply to services offered in multiple states and countries and requiring the use of the Internet, given its role as an "instrumentality and channel of interstate commerce." *United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007); *see also Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003) ("Because this provision is part of a contract affecting interstate and international commerce, it is governed by the [FAA]."); *Garten v. Kurth*, 265 F.3d 136, 142 (2d Cir. 2001) (determining that the contracts at issue "evidence[d] a transaction involving commerce subject to the FAA," including because one of the parties "did business in multiple states"). Accordingly, the FAA and its policy favoring arbitration controls here.

Plaintiff's agreement to the Terms of Service renders the arbitration provision, along with the delegation provision and class waiver, valid and binding. Courts regularly grant motions to

compel arbitration arising from comparable "sign-in wrap" arbitration agreements, which are a "type of agreement … that does not require the user to click a box showing acceptance of the terms of use in order to continue, but rather notifies the user of the existence and applicability of the website's terms of use when proceeding through the website's sign-in or login process." *Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 7309893, at *3 (S.D.N.Y. Nov. 20, 2017), *report and recommendation adopted as modified*, 2018 WL 671258, at *1-2 (S.D.N.Y. Jan. 31, 2018); *see also Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711, 723–24 (E.D.N.Y. 2017) ("[C]ourts in this Circuit have upheld 'Sign–In Wrap' agreements where plaintiffs did not even click an 'I Accept' button, but instead clicked a 'Sign Up' or 'Sign In' button where nearby language informed them that clicking the buttons would constitute accepting the terms of service."); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839-41 (S.D.N.Y. 2012) (collecting cases enforcing sign-in wrap agreements). Such "sign-in wrap" agreements are enforceable where "[1] notice of the arbitration provision was reasonably conspicuous," and "[2] manifestation of assent [was] unambiguous as a matter of law." *Bernardino*, 2017 WL 7309893, at *3. Both requirements are satisfied here.

***Reasonably Conspicuous Notice of the Arbitration Provision.*** Fubo provided reasonably conspicuous notice to Plaintiff that signing up for a Fubo account required her agreement to the effective Terms of Service. As set forth above, the sign-up page that Plaintiff viewed each time she created an account prompted her to enter identifying information such as her email address and home ZIP code, and stated on the same screen that: "By continuing, I agree to the Terms of Service, acknowledge the Privacy Policy, and agree to receive promotion emails regarding fuboTV." Allen Decl. ¶ 6. That statement is displayed in black font clearly visible against a white background, with the reference to "Terms of Service" displayed in underlined blue font with a

hyperlink that, if clicked, would have directed Plaintiff to a page with the Terms of Service. *Id.* ¶¶ 6-7. The "Terms of Service" statement is located directly underneath the fields where Plaintiff was required to enter her email address, password, and home ZIP code, making it unnecessary for Plaintiff to scroll down to view the Terms of Service notice or see the hyperlinked reference to Fubo's Terms of Service. *Id.* Moreover, the link to the "Terms of Service" is directly above the "Continue" button that Plaintiff was required to press to register her account. *Id.* And Fubo provided notice of the Terms of Service at the beginning of the sign-up process, putting reasonable customers on notice that agreeing to the Terms of Service is a condition of using the Fubo Platform. *Id.*

The Second Circuit and other courts have held that similarly composed arbitration agreements were reasonably conspicuous. For example, in *Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2d Cir. 2017), the Second Circuit determined that "the design of the screen and language used render the notice provided reasonable as a matter of California law" because "[t]he Payment Screen is uncluttered"; "[t]he text, including the hyperlinks to the Terms and Conditions and Privacy Policy, appears directly below the buttons for registration"; "[t]he entire screen is visible at once, and the user does not need to scroll beyond what is immediately visible to find notice of the Terms of Service"; "notice of the Terms of Service is provided simultaneously to enrollment, thereby connecting the contractual terms to the services to which they apply"; and "[a]lthough the sentence is in a small font, the dark print contrasts with the bright white background, and the hyperlinks are in blue and underlined." *Id*. at 78; *see* App. at 1 (applicable registration screen reproduced from the *Uber* court's opinion). Fubo's registration screen is substantially the same—and in some respects provides more conspicuous notice than Uber's, including because the link to Fubo's

Terms of Service is located directly *above* the "Continue" option—so the reasoning in *Meyer* fully applies here.

The Second Circuit recently reached a similar holding in *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 705-07 (2d Cir. 2023), finding that a registration screen substantially similar to Fubo's provided reasonable notice to users.[3] *See* App. at 2 (applicable Klarna screen reproduced from the *Klarna* court's opinion). And this Court came to a similar determination in *Bernardino v. Barnes & Noble Booksellers, Inc.*, holding that an arbitration provision in defendant's terms of use "was reasonably conspicuous to a reasonably prudent user" because "[t]he language alerting the user to the [Terms of Use] was clear and obvious by virtue of its black sans-serif font contrasted against a white background"; the hyperlink to the Terms of Use was indicated in blue font, "also contrasted against a white background"; "[t]he notice about the [Terms of Use] also was temporally connected to an action by the user—the submission of a purchase order"; and "[t]he language of the text was a clear prompt to users to read the [Terms of Use] before submitting their purchase order insofar as it stated '[b]y making this purchase you are agreeing to our Terms of Use and Privacy Policy.'" 2017 WL 7309893, at *9, *report and recommendation adopted as modified*, 2018 WL 671258, at *1-2.

***Unambiguous Manifestation of Assent.*** Fubo put Plaintiff and other customers on reasonably conspicuous notice of the Terms of Service, and Plaintiff manifested an unambiguous assent to the Terms (including the arbitration provision and class waiver) each time that she created

[3] Similarly, in *Selden v. Airbnb, Inc.*, 4 F.4th 148 (D.C. Cir. 2021), the D.C. Circuit held Airbnb's registration screen sufficient where: (i) "[t]he three buttons [for Facebook, Google, and email registration] plainly provided options for how a user could sign up for Airbnb"; (ii) "[d]irectly below these three options, Airbnb informed the user that 'By signing up, I agree to Airbnb's Terms of Service'"; and (iii) "[t]he buttons appeared in close proximity to the notice and on a single screen." *Id*. at 157; *see* App. at 3 (applicable Airbnb registration screen reproduced from the *Airbnb* court's opinion).

a Fubo account without submitting an opt-out notice. Allen Decl. ¶¶ 13, 15. Courts routinely grant motions to compel arbitration where, as here, a plaintiff's actions unambiguously manifest assent to arbitration provisions that were reasonably conspicuous during a company's sign-up process. *See Edmundson*, 85 F.4th at 707-08 (plaintiff "unambiguously manifested assent to Klarna's terms when … she selected 'Confirm and continue' to finalize her GameStop purchase," where Klarna's hyperlinked terms and a statement that "I agree to the payment terms" were located directly above the "Confirm and continue" option); *Meyer*, 868 F.3d at 79-80 (plaintiff's assent to arbitration was "unambiguous in light of the objectively reasonable notice of the terms"); *Bernardino*, 2017 WL 7309893, at *10 (plaintiff had unambiguously agreed to terms of use where she was provided with adequate notice of the terms, had a meaningful opportunity to review the terms, had adequate notice that signing up for an account would manifest assent to the terms, and completed the sign-up process). There is no reason to reach a different result here.

### B. The Arbitration Provision Encompasses Plaintiff's Claims And Delegates Disputes About Gateway Arbitrability Issues To The Arbitrator

Having validly entered into the Terms of Service with Fubo, Plaintiff is bound by their provisions. Settled law makes clear that the Agreement's arbitration provision and class waiver apply here and require arbitration of Plaintiff's claims on an individual basis.

Courts enforce arbitration agreements where, as here, the dispute at issue comes within its scope. *See Guyden*, 544 F.3d at 382. The Terms of Service broadly "mandate that all disputes between you and Fubo be resolved first through an informal dispute resolution process." Ex. 1 § 22. The "Informal Dispute Resolution" provision requires a customer and Fubo to "use their best efforts to settle informally" "any and all disputes between [the customer] and Fubo" through good-faith negotiations. *Id.* § 22.1. "If the parties' dispute is not resolved within sixty (60) days after receipt of the written description of the dispute," then the customer and Fubo agree "to resolve

any remaining dispute through the additional dispute resolution provisions," which include mandatory individual arbitration. *Id.* § 22.1-22.2. The arbitration provision further provides that:

> [A]ll claims, disputes, or disagreements that may arise out of or relating to the interpretation, applicability, enforceability, formation, or performance of these Terms of Service—including but not limited to any claim that all or any part of these terms are void or voidable, whether a claim is subject to arbitration, and any dispute regarding the payment, non-payment, or timing of any administrative or arbitrator fees—shall be resolved exclusively through binding arbitration.

Ex. 1 § 22.2(a).

The scope of the arbitration provision is broad—covering "all disputes between [Plaintiff] and Fubo" and "all claims, disputes, or disagreements that may arise out of or relating to the interpretation, applicability, enforceability, formation, or performance of these Terms of Service"—and unquestionably encompasses Plaintiff's claims against Fubo for allegedly disclosing her "personal identifying information" to third parties in violation of the VPPA. Compl. ¶¶ 56-64. In addition, Plaintiff's VPPA claims specifically relate to the "Data Privacy" provision of the Terms of Service, which states in part:

> You expressly consent to the use and disclosure of your personal information and any other information or data resulting from Your access to and use of the Platform or any Services or Content as described in the Privacy Policy for the Platform available at legal.fubo.tv/policies/en-US/?name=privacy-policy ("**Privacy Policy**") at the time You provide such information or data to Fubo,

Ex. 1 § 10 (a) (emphasis in original).

"The existence of a broad arbitration clause creates a presumption of arbitrability which can be overcome only if it may be said 'with positive assurance' that the arbitration clause is not susceptible to the interpretation that it covers the asserted dispute." *Orange Cnty. Choppers, Inc. v. Goen Techs. Corp.*, 374 F. Supp. 2d 372, 374 (S.D.N.Y. 2005). Courts routinely determine that arbitration clauses that cover any and all disputes arising out of or relating to a company's terms of service count as a "broad" arbitration clause. *See, e.g.*, *Collins & Aikman Prods. Co. v. Bldg.*

*Sys., Inc.*, 58 F.3d 16, 20 (2d. Cir. 1995) (arbitration clause applying to "[a]ny claim or controversy arising out of or relating to th[e] agreement" was broad); *Orange Cnty. Choppers, Inc.*, 374 F. Supp. 2d at 374 (same with respect to arbitration clause covering "[a]ny disputes arising from this [a]greement"); *Marcus v. Frome*, 275 F. Supp. 2d 496, 504 (S.D.N.Y. 2003) (same with respect to arbitration clause covering "any dispute, controversy or claim arising out of or relating to this Agreement"). The arbitration provision in Fubo's Terms of Service contains similarly broad language "mandat[ing] that all disputes between [Plaintiff] and Fubo be resolved first through an informal dispute resolution process," and to then be "formally resolved through binding arbitration" if the informal dispute resolution process is unsuccessful. Ex. 1 § 22; *id.* § 22.1 ("For any and all disputes between you and Fubo, the parties shall use their best efforts to settle informally the dispute, claim, question, or disagreement and to engage in good faith negotiations."). That arbitration provision applies to "all claims, disputes, or disagreements that may arise out of or relating to the interpretation, applicability, enforceability, formation, or performance of these Terms of Service," Ex. 1 § 22.2(a), thereby giving rise to the presumption of arbitrability.

Plaintiff cannot overcome the presumption of arbitrability with any assurance, let alone positive assurance. Plaintiff seeks to recover monetary and other forms of relief under the VPPA for Fubo's alleged collection, use, and disclosure of her video viewing history and "personally identifiable information" as part of her relationship with Fubo. Compl. ¶¶ 56-64. The arbitration provision, by covering "all claims, disputes, or disagreements that may arise out of or relating to the interpretation, applicability, enforceability, formation, or performance of these Terms of Service," Ex. 1 § 22.2(a), encompasses those VPPA claims, which arise generally out of the performance of the Terms of Service to which Plaintiff agreed, and specifically out of the "Data

Privacy" provision in those Terms of Service. *See Paramedics Electromedicina Comercial Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 654 (2d Cir. 2004) (holding that "arising out of" means that if the "allegations underlying the claims 'touch matters' covered by the parties' … agreements, then those claims must be arbitrated").

If there were somehow a dispute about the scope of the arbitration provision, the provision contains clear and unmistakable language delegating to the arbitrator questions about the "interpretation, applicability, enforceability, formation, or performance of these Terms of Service," including "whether a claim is subject to arbitration." Ex. 1 § 22.2(a); *see Gateguard, Inc. v. MVI Sys. LLC*, 2021 WL 4443256, at *6 (S.D.N.Y. Sept. 28, 2021) (an arbitration provision's "mandate that 'any' dispute or claim that 'arise[s] out of or relat[es] to' the agreement be settled in arbitration is categorical, unconditional and unlimited and thus encompasses a dispute over whether a claim is within the scope of arbitration"). The arbitration provision makes clear that those questions "shall be resolved exclusively through binding arbitration," which parallels language in other arbitration provisions that courts have found to clearly and unmistakably delegate threshold questions of arbitrability to the arbitrator. *See, e.g.*, *Sinavsky v. NBCUniversal Media, LLC*, 2021 WL 4151013, at *5 (S.D.N.Y. Sept. 13, 2021) (delegation provision clearly and unmistakably delegated arbitrability to arbitrator by providing that "[t]he Arbitrator, and not any court or agency, shall have exclusive authority to resolve any dispute relating to the applicability, interpretation, formation, or enforceability of this Agreement, including, but not limited to, any claim that the entirety or any part of this Agreement is voidable or void").

That clear and unmistakable language is reinforced by the Terms of Service's incorporation of the National Arbitration and Mediation's ("NAM's") Comprehensive Dispute Resolution Rules and Procedures, which also delegate threshold questions of arbitrability to the arbitrator. *See* NAM

Comprehensive Dispute Resolution Rules and Procedures, Rule 17(B) ("The Arbitrator(s) shall have the authority to determine jurisdiction and arbitrability, including, but not limited to, any issue regarding the validity, existence formation or scope of the agreement under which Arbitration is being sought, and the proper parties to the Arbitration."), available at https://www.namadr.com/content/uploads/2022/04/Comprehensive-Rules-as-of-4.18.2022.pdf (last accessed Apr. 8, 2024). Such an incorporation also constitutes clear and unmistakable evidence that the parties intended to delegate threshold questions about the arbitration provision's scope to the arbitrator. *See Murray v. UBS Securities, LLC*, 2014 WL 285093, at *13 (S.D.N.Y. Jan. 27, 2014) ("[T]he Second Circuit has found, addressing both the JAMS and FINRA rules at issue here, that these rules evidence the parties' intent to arbitrate the question of arbitrability.") (citing *Emilio v. Sprint Spectrum LP*, 508 F. App'x 3, 6 (2d Cir. 2013) (summary order). Accordingly, any potential arguments that Plaintiff might raise regarding the scope of the arbitration provision should be presented to and decided by an arbitrator rather than the Court. As the Second Circuit has held, "any doubts concerning the scope of arbitrable issues [should] be resolved in favor of arbitration." *Telenor Mobile Commcn's AS v. Storm LLC*, 584 F.3d 396, 406 (2d Cir. 2009).

Finally, the class and collective action waiver—which states that "ANY ARBITRATION SHALL BE CONDUCTED IN AN INDIVIDUAL CAPACITY ONLY AND NOT AS A CLASS OR OTHER CONSOLIDATED ACTION, AND THE ARBITRATOR MAY AWARD RELIEF ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO RESOLVE AN INDIVIDUAL PARTY'S CLAIM," Ex. 1 § 22.2(c) (emphasis in original)—unambiguously encompasses Plaintiff's claims as well. Class waivers like the one in the Terms of Service are enforceable under the FAA and New York law. *See, e.g.*,

*AT&T Mobility LLC*, 563 U.S. at 352 (holding such waivers enforceable under the FAA); *Nayal v. HIP Network Svcs. IPA, Inc.*, 620 F. Supp. 2d 566, 573 (S.D.N.Y. 2009) ("Courts applying New York law … have uniformly held that class action waivers are not unconscionable."). Plaintiff thus cannot bring any classwide claims in this Court—or in arbitration. *See Nayal*, 620 F. Supp. 2d at 573 (enforcing arbitration provision that "effectively barr[ed] class actions" by "imposing mandatory arbitration for claims under $750,000").

### C. Federal Statutory Claims Under The VPPA Are Arbitrable

A court's duty "to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights," unless "the [FAA]'s mandate [is] overridden by a contrary congressional command." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). Preventing enforcement on federal statutory grounds requires "showing that Congress intended to preclude waiver of judicial remedies for the statutory rights at issue," with "[p]roof of that intent" being "discoverable in the text of the [statute], its legislative history, or an inherent conflict between arbitration and the [statute's] underlying purposes." *Guyden*, 544 F.3d at 382.

Congress had no such intent to preclude waiver of judicial remedies with respect to the VPPA, and Plaintiff cannot meet her burden of showing otherwise. The VPPA provides a private right of action to "[a]ny person aggrieved by any act of a person in violation of this section," including for the alleged disclosure of that individual's personal identifying information to third parties. 18 U.S.C. § 2710(c)(1). "[A] statute's provision for a private right of action alone is inadequate to show that Congress intended to prohibit arbitration," *Davis v. S. Energy Homes, Inc.*, 305 F.3d 1268, 1274 (11th Cir. 2002) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 29 (1991)), and none of the VPPA's provisions makes any mention of an intent to mandate litigation of VPPA claims in court or otherwise to preclude arbitration. That is a far cry from the

express language that is required to show congressional intent to preclude arbitration over federal statutory claims. *See Murray*, 2014 WL 285093, at *10-11 (explaining that certain claims brought under the Sarbanes-Oxley Act are nonarbitrable due to the Act's "predispute provision," which states that "[t]he rights and remedies provided for *in this section* may not be waived by … a predispute arbitration agreement") (emphasis in original).

Unlike the Sarbanes-Oxley Act's predispute provision, the VPPA does not override the FAA. Indeed, courts repeatedly find that claims under the VPPA and other federal consumer protection statutes are arbitrable where, as here, the plaintiff could not meet her burden of showing that Congress intended to preclude arbitration of the statutory claims at issue. *See, e.g.*, *Bernardino*, 2017 WL 7309893, at *1, 13, *report and recommendation adopted as modified*, 2018 WL 671258, at *1-2 (S.D.N.Y. Jan. 31, 2018) (compelling arbitration of VPPA claims); *Aneke v. Am. Exp. Travel Related Servs., Inc.*, 841 F. Supp. 2d 368, 377 (D.D.C. 2012) (holding that claims brought under the Right to Financial Privacy Act are arbitrable). Plaintiff likewise cannot overcome the federal presumption here. *See Michel v. Parts Auth., Inc.*, 2016 WL 11798927, at *3 (E.D.N.Y. June 17, 2016) (determining that claims under the federal Fair Labor Standards Act were arbitrable because the plaintiff "has not cited any Supreme Court or Second Circuit case, nor any language in the FLSA's text, that would require the non-arbitration of the individual FLSA claims asserted").

### D. Plaintiff's Claims Should Be Stayed or Dismissed

The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). The arbitration provision to which Plaintiff agreed in Fubo's Terms of Service encompasses her VPPA claims and delegates any disputes about the arbitration

provision's scope to the arbitrator. *See supra*, at 18-20. Plaintiff should be compelled to submit her claims to individual arbitration, and the proceedings in this Court should be stayed or dismissed pending resolution of the arbitration proceedings. *See Orange Cnty. Choppers, Inc.*, 374 F. Supp. 2d at 373-75 (staying court proceedings upon grant of motion to compel arbitration); *Bimota SPA v. Rousseau*, 628 F. Supp. 2d 500, 506 (S.D.N.Y. 2009) ("All courts of which we are aware have followed the rule that, [w]here all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings.") (collecting cases).

## V. CONCLUSION

For the reasons set forth above, this Court should compel Plaintiff to submit her claims to individual arbitration and should stay or dismiss these federal court proceedings.

Date: April 8, 2024

Respectfully submitted,

**LATHAM & WATKINS LLP**

*/s/ Andrew Clubok*

Andrew Clubok
1271 Avenue of the Americas
New York, New York, 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: andrew.clubok@lw.com

*Counsel for Defendant fuboTV, Inc.*